## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA.**

    **Plaintiffs,**

    **v.**

**[2] EMILIO PINALES,**

    **Defendant.**

**Crim. No. 22-004 (ADC)**

---

### OPINION AND ORDER

The United States of America ("government") moves for reconsideration of this Court' order (**ECF No. 90**) granting defendant Emilio Pinales' ("defendant") motion to compel (**ECF No. 88**). *See* **ECF No. 91**. For the reasons explained below, the motion for reconsideration is **GRANTED**, and accordingly, the Order at **ECF No. 90** is **VACATED** and defendant's motion to compel at **ECF No. 88** is **DENIED**.

**I.    Introduction and Procedural Background**

Defendant filed a motion on December 21, 2023, to compel the government to disclose certain materials related to his arrest and prosecution under the Maritime Drug Law Enforcement Act, 46 U.S.C. § 70501 et seq. ("MDLEA"). Defendant specifically requested six categories of documents pertaining to the government's communications with authorities in the Dominican Republic regarding the registry and nationality of the vessel on which he was arrested. *See* **ECF No. 88** at 1-2.

Defendant is charged with possession and conspiracy to possess cocaine with intent to distribute aboard a vessel subject to the jurisdiction of the United States under 46 U.S.C. §§ 70503(a)(1), 70506(b), and 21 U.S.C. § 960(b)(1)(B). **ECF No. 1**. Under section 70502(c)(1)(A) of the MDLEA, the definition of a "vessel subject to the jurisdiction of the United States" includes a "vessel without nationality." 46 U.S.C. § 70502(c)(1)(A). In turn, a "vessel without nationality" includes one whose claimed nation of registry does not affirmatively and unequivocally confirm that the vessel is of its nationality, as well as one whose claim of registry is denied by said nation. *Id.*, § 70502(d)(1)(A) and (C). Section 70502(d)(2) provides that in such cases, "[t]he response of a foreign nation to a claim of registry… may be made by radio, telephone, or similar oral or electronic means, and is proved conclusively by certification of the Secretary of State or the Secretary's designee." *Id.*, § 70502(d)(2).

Defendant's discovery requests seek to discover documents and information directly related to the Dominican Republic's response to the claim of registry and the Secretary of State's certification under section 70502(d)(2). Specifically, the requests were:

(a) Any and all recordings, transcripts, or memorializations of any communication with the government of the Dominican Republic or any of its dependencies regarding the vessel or the intervention.

(b) Copies of any written communications with the government of the Dominican Republic or any of its dependencies regarding the vessel or the intervention.

(c) The names and contact information of any and all officials of the government of the Dominican Republic or any of its dependencies who provided information or responded to U.S. Government inquiries concerning the vessel.

(d) The names and contact information of any and all officials of the United States government who communicated with the government of the Dominican Republic or any of its dependencies to make inquiries concerning the vessel.

(e) Indicate what information was provided to the government of the Dominican Republic or any of its dependencies to make inquiries concerning the vessel on December 22, 2021, and in March of 2022, and provide all communications regarding such inquiries.

(f) Any Completed Right Warning Procedure/Waiver Certificate form relating to Mr. Pinales.

**ECF No. 88** at 1-2. Defendant contends that the requested documents and information are discoverable and material to his defense because "the government must prove to a jury beyond reasonable doubt that the vessel in question is a 'vessel without nationality,' as an element of the offense." *Id.*, at 7. This echoes some of the arguments that defendant included in his motion to dismiss the indictment. *See* **ECF Nos. 42**, **49**, and **64**.

On December 27, 2023, and without the benefit of the government's position, the Court granted defendant's motion as to five out of six requested categories of documents and information. **ECF No. 90**. The government immediately filed a motion for reconsideration arguing, among other things, that First Circuit precedent was clear in that the compelled documents and information were not subject to discovery under Fed. R. Crim. P. 16(a)(2). **ECF No. 91**. This, the government argues, because defendant's purported defense theory seeks not to refute the government's case-in-chief, but to establish an independent bar to prosecution. *Id.*, at 3 (citing *United States v. Armstrong*, 517 U.S. 456 (1996) and *United States v. Apodaca*, 287 F. Supp. 3d 21 (D.D.C. 2017)). Moreover, the government points out that defendant's theory is

undermined by First Circuit precedent and that defendant cannot challenge the Secretary of State's certification under section 70502(d)(2). *Id.*, at 3 (citing *United States v. Martínez*, 640 Fed. App'x 18 (1st Cir. 2016); *United States v. Cardales-Luna*, 632 F.3d 731 (1st Cir. 2011); *United States v. Mitchell-Hunter*, 663 F.3d. 45 (1st Cir. 2011)).

Defendant opposed the motion on December 29, 2023. **ECF No. 92**. In essence, defendant argues that the government's motion does not meet the standard set out by Fed. R. Civ. P. 59(e), which the First Circuit applies to motions for reconsideration in criminal cases. *Id.*, at 1-2. As to substance, defendant argues that Fed. R. Crim. P. 16(a)(2) does not apply to his requests because the rule applies to attorney and investigatory agent work product. *Id.*, at 2. In addition, defendant claims that his requests are not foreclosed under First Circuit precedent because they are novel issues not considered in the cases cited by the government *Id.*, at 3.

The government replied, reaffirming its prior arguments and adducing to this Court's considerable discretion in granting or denying motions for reconsideration. **ECF No. 98**.

## II.    Discussion

The Court begins by recognizing that L. Crim. R. 116(b)(3) affords a party responding to a discovery motion 14 days to file a response. While the Court may certainly rule on a motion within said period and without the benefit of such a response, in such cases the government is by no means precluded from seeking reconsideration of the order just because the Court elected to rule prior to the expiration of the response period.

Both parties recognize that Fed. R. Civ. P. 59(e) provides guidance for the Court's exercise of discretion as to whether to grant or deny a motion for reconsideration. Although the government does not specify which ground it relies on, the Court construes its motion as one to correct a manifest error of law. After all, the government is arguing that the Court's decision to grant defendant access to information and documents related to the Secretary of State's certification of statelessness runs contrary to binding First Circuit precedent.

As summarized above, defendant seeks to use the compelled documents to challenge the government's ability to establish, "as an element of the offense," that the vessel in which he was arrested was stateless. He argues that the documents are material to preparing his defense pursuant to Fed. R. Crim. P. 16(a)(1)(E).[1] The government's opposition relies on the assumption that this is not a defense to the government's case-in-chief, but an argument for an independent bar to prosecution, and therefore outside the scope of the discovery permitted by Fed. R. Crim. P. 16. The government relies on the Supreme Court's opinion in *Armstrong* and the D.C. district court's opinion *Apodaca* for this proposition, but these are cases not entirely on-point.

---

[1] In this context, "materiality" is taken to mean something more than "some abstract logical relationship to the issues in the case." *United States v. Goris*, 876 F.3d 40, 44-45 (1st Cir. 2017) (quoting *United States v. Ross*, 511 F.2d 757, 762 (5th Cir. 1975)). It requires a showing that "pretrial disclosure of the information sought would [enable] the defendant [to] significantly to alter the quantum of proof in his favor." *Id.*, at 45 (citing authorities) (quotation marks omitted). "This significant alteration may take place in a myriad of ways, such as uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Id.* (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)) (quotation marks omitted). Importantly, however, "[i]f… a defendant's discovery request is grounded in a speculative theory," a district court may exercise its discretion and deny it. *Id.*

In *Armstrong*, the Supreme Court interpreted a prior version of Fed. R. Crim. P. 16(a)(1)(E)—then numbered as Rule 16(a)(1)(C) but identical in substance to its current version. It read the phrase "defendant's defense" to mean the defendant's response to the government's case-in-chief, distinguishing between defenses that are wielded as "swords" and those that are wielded as "shields." *Armstrong*, 517 U.S. at 462. Sword defenses "challenge the prosecution's conduct of the case" and are not within the scope of Rule 16 discovery. *Id.*, On the other hand, shield defenses "refute the Government's arguments that the defendant committed the crime charged." *Id.* The Supreme Court concluded that discovery under Rule 16 was not available to a defendant claiming selective prosecution because a "selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Id.*, 463. Treating it as an independent claim and relying on *Wade v. United States*, 504 U.S. 181 (1992), the Supreme Court went on to examine the elements of a selective prosecution claim to determine whether the defendant had made an "appropriate threshold showing" of improper motive that would warrant discovery, but ultimately decided that he had not. *Armstrong*, 517 U.S. at 463-471.

In *Apodaca*, the district court for the District of Columbia denied a defendant's request for discovery under Rule 16 because the request was a "broad, time-consuming and burdensome fishing expedition...." *Apodaca*, 287 F. Supp. 3d at 39. The defendant requested production of certain government wiretap intercepts related to co-conspirators in order to "argue that the Government improperly minimized the communications … and search for exculpatory

evidence." *Id.*, at 37. The district court, after analyzing the applicable Rule 16 standard, denied the request because it was based on speculative justifications. *Id.*, at 40-41. Of relevance here, the district court relied on *United States v. Rashed*, 234 F.3d 1280 (D.C.C. 2000), where a defendant intended to raise a double jeopardy claim via the "sham prosecution" exception to the dual sovereignty doctrine. *Rashed*, 234 F.3d at 1280-81. In furtherance of his claim, the defendant sought discovery of information related to the alleged "sham prosecution" which the district court denied. The D.C. Circuit upheld the denial of his discovery request (and of his motion to dismiss) reasoning, inter alia, that his defense "relates not to refutation of the government's case in chief but to establishment of an independent constitutional bar to the prosecution," and holding that "*Armstrong* requires the defendant, as a condition of discovery, to adduce to some evidence tending to show the essential elements of the defense, not just evidence material to that defense as required by Rule 16." *Id.*, at 1285 (citing *Armstrong*, 517 U.S. at 462) (quotation marks omitted).[2]

Two questions derive from this discussion. First, if defendant's purported defense is a "shield" defense directed at refuting the government's case-in-chief, are the requested documents and information "material" to the defense? Second, if, on the other hand, it is a "sword" defense claiming that the Constitution bars his prosecution, has defendant nonetheless

---

[2] In *Armstrong* and *Rashed*, allowing discovery into the defendants' claims would have entailed discovery into the government's work-product and trial strategy, which made them fit squarely within Fed. R. Crim. P. 16's bar against discovery of "government documents made by an attorney or the government of other government agent in connection with investigating of prosecuting the case." Fed. R. Crim. P. 16(a)(2). Here, the government does not endeavor to explain how the requested materials fit into this prohibition, and it is far from evident that they do.

made a non-speculative showing of its viability? The Court is of the view that it need not answer either question definitively because regardless of whether defendant is attempting to use a shield or wield a sword, the requested documents and information would not be material to the stated defense and defendant's justification for seeking them is highly speculative. This, because MDLEA and current First Circuit precedent foreclose defendant's defense.

MDLEA section 70504(a) provides that the "[j]urisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense. Jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. § 70504(a). The First Circuit held as much in *Mitchell-Hunter* when it rejected a statutory and common-law argument that MDLEA's jurisdictional component is an element of the offense. *See Mitchell-Hunter*, 633 F.3d. at 51. It further held that the Secretary of State Certification there at issue "did not go toward proving an element of the offense…." *Id.*, at 52 (citing *Vilches-Navarrete*, 523 F.3d 1, 27 (1st Cir. 2000)). In doing so, the First Circuit relied on MDLEA section 70505, which clearly precludes a defendant charged under section 70503 from raising a defense based on international law. 46 U.S.C. § 70505. That sort of claim may be made only by a foreign nation, as the jurisdictional requirement "is not meant to protect a defendant's rights, but instead to maintain comity between foreign nations…." *Mitchell-Hunter*, 633 F.3d at 51; 46 U.S.C. § 70505.

*Cardales-Luna* also supports this conclusion. There, the First Circuit recognized that prior to an amendment enacted in 1996, MDLEA left open the possibility of "looking behind" the

Secretary of State Certification "to challenge its representations and factual underpinnings." *Cardales-Luna*, 632 F.3d at 737 (quoting *United States v. Guerrero*, 114 F.3d 332, 341 (1st Cir. 1997)). This, because the prior language of the statute provided that the basis for deeming vessel subject to the jurisdiction of the United States "may be proved" by a Secretary of State Certification. *Id.* (citing *United States v. Leuro-Rosas*, 952 F.2d 616, 619 (1st Cir. 1991)). The First Circuit contrasted this permissive wording with the current statutory text, which establishes that such basis "is proved conclusively" by a Secretary of State Certification. *Id.* It thus held that "such a certification is 'conclusive' and any further question about its legitimacy is 'a question of international law that can be raised only by the foreign nation.'" *Id.* (cleaned up). And although *Cardales-Luna* interpreted MDLEA section 70502(c)(2), the language in that section is virtually identical to that of section 70502(d)(2), which is at issue here.

It is evident that defendant here is attempting to look behind the Secretary of State's Certification attesting to the Dominican Republic's denial of the vessel's claimed registry and nationality in order to contest the United States's assertion of jurisdiction. But the entire line of argument based on this being an element of the offense is foreclosed by statute and precedent.[3] Although defendant pushes back and argues that these precedents are incorrect or that they are

---

[3] Although certainly illustrative, the Court does not put much reliance on *United States v. Martínez*, 640 Fed. App'x 18 (1st Cir. 2016), cited by the government, because it is an unpublished opinion. *See* First Circuit Local Rule 36.0(c) ("While an unpublished opinion of this court may be cited to this court [i.e., the First Circuit Court of Appeals] in accordance with Fed. R. App. P. 32.1 and Local Rule 32.1.0, a panel's decision to issue an unpublished opinion means that the panel sees no precedential value in that opinion."). The Court did nonetheless take it into account for its persuasive value. *See, e.g., id.*, Rule 32.1.0(a) ("The court will consider such [unpublished] dispositions for their persuasive value but not as binding precedent.").

not dispositive, the Court is bound by stare decisis to follow First Circuit precedent on this matter. *United States v. Moore-Bush*, 963 F.3d 29, 37 (1st Cir.), *reh'g en banc granted, opinion vacated on other grounds*, 982 F.3d 50 (1st Cir. 2020), and *on reh'g en banc*, 36 F.4th 320 (1st Cir. 2022) (per curiam). For these reasons, the Court holds that MDLEA's jurisdictional component is not an element of the offense, and as such, the requested documents and information are immaterial to the refutation of the government's case in chief. For that same reason, the Court finds that defendant's purported basis for discovery is speculative. Defendant's motion, therefore, flounders in the wake of this conclusion and must be denied.

## III.   Conclusion

For these reasons, the Court **GRANTS** the government's motion for reconsideration at **ECF No. 91**. Accordingly, the Order at **ECF No. 90** is hereby **VACATED** and defendant's motion to compel at **ECF No. 88** is **DENIED**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 16th day of February, 2024.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**